IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CLINICAL RESOURCE NETWORK, LLC d/b/a SYMPHONY CLINICAL RESEARCH, | : | Case No. 1:23-cv-00239 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | |
| MEDPACE, INC., | : | Order Granting Medpace, Inc.'s Motion for Summary Judgment |
| Defendant. | : | |

This matter is before the Court on Medpace, Inc.'s Motion for Summary Judgment. (Doc. 63.) Plaintiff Clinical Resource Network, LLC d/b/a Symphony Clinical Research ("Symphony") opposes the Motion, and Medpace replied in support. (Docs. 73, 74.) For the reasons that follow, the Court will **GRANT** Medpace's Motion. (Doc. 63.)

## I. BACKGROUND

This is a straightforward breach-of-contract action between two sophisticated clinical research organizations ("CROs"), Symphony and Medpace, over a significant amount of unpaid, late invoices.[1] Symphony is engaged in the business of providing or arranging for alternate site healthcare services and the management of those services for pharmaceutical/biotechnology companies. (Master Services Agreement ("MSA"), Doc. 65-2 at PageID 1666.) Medpace is a publicly-traded company based in Cincinnati, Ohio that provides clinical trial management, laboratory services, regulatory services and advice, imaging services, data management, and medical writing support for clinical trials or development programs ("CRO Services") worldwide. (Sergent Dec., Doc. 65-1 at PageID 1659.)

[1] Medpace claims Symphony has not disclosed the invoices it claims are the basis of this lawsuit, so it is unclear the exact amount of damages, ranging from 1.5 to 2.0 million dollars. (Doc. 63-1 at PageID 1632.)

**A. Master Services Agreement for Clinical Trials ("MSA")**

On February 23, 2016, Symphony and Medpace[2] entered into a Master Services Agreement for Clinical Trials ("MSA"). (MSA, Doc. 65-2.) The services performed under the MSA were for the benefit of a Sponsor, or Third-Party Beneficiary, as set forth in Section 5(t) of the MSA:

> **Sponsor as Third-Party Beneficiary**. The parties to this Agreement recognize and agree that Sponsor takes the benefit from this Agreement as a third-party beneficiary and agree that Sponsor may enforce such rights either directly or indirectly through Company. The parties reserve the right to amend or terminate this Agreement without the consent of or liability to the Sponsor or Third-Party Beneficiary.

(*Id*. at PageID 1675–76.) The Sponsor of the MSA was Alnylam Pharmaceuticals Incorporated ("Alnylam"). (Sergent Dep., Doc. 60 at PageID 1334–35, 1337–39.)

The Obligations for both Symphony and Medpace are set forth under Sections 1 and 2 of the MSA, respectively. The parties agreed under Section 1(a)(i) that "Symphony shall provide the study management and nursing/pharmacy/lab services as specified in the applicable work order (the 'Services') attached as Exhibit A, attached hereto." (Doc. 65-2 at PageID 1666–67.) Under the Invoice provision, Symphony was to provide invoices within a designated timeframe set forth under Section 1(d) or forfeit payment for those services:

> d) Invoice. Symphony shall provide Company with invoices on a monthly basis for services actually performed. Symphony shall accept the payments relating to each such invoice as full compensation for the Services referenced in such invoice and shall not bill the Study Participant for any such Services described herein.
>
> Symphony shall send all invoices to the following Medpace accounting contact:
> Medpace Inc.
> 5375 Medpace Way
> Cincinnati, Ohio 45227
> Phone: +1.513.579.9911

[2] Medpace is defined as "Company" in the MSA. (*Id*. at PageID 1566.)

> Fax: +1.513.579.0446
> Email: AP-United States@medpace.com
>
> Invoices must be received within seventy-five (75) days of the performance of the Service(s) or the incurrence of any pass-through expense included in the invoice. Invoices received seventy five (75) days after will not be paid.

(*Id*. at PageID 1667–68.)

Section 2, in turn, sets forth Medpace's Obligations, including paying for Services within sixty days of receipt of an invoice:

> b) Compensation Rates and Claims Payment. For all Services listed on a specific Work Order Exhibit A, a budget will be created, added to the Work Order for the Specific Study and Company shall pay Symphony an amount equal to the rate specified for such Services within sixty (60) days of its receipt of Symphony's invoice for such Services through electronic funds payment. Symphony shall accept such payment as full compensation for undisputed amounts of the Services described in each invoice and rendered pursuant to this Agreement and the applicable Work Order. Notwithstanding the foregoing, if Company disputes any Services provided in an applicable Work Order for such Services, Company shall promptly notify Symphony of such dispute and shall not be obligated to pay that portion of the disputed amount until such time as the parties confer and reconcile the disputed amount.

(*Id*. at PageID 1669.)

Under a Miscellaneous provision, the parties agreed to indemnification and limitation of liability:

> iv. Under no circumstances shall either Party be liable to the other in contract, tort (including negligence or breach of statutory duty) or otherwise howsoever arising or whatever the cause thereof, for any loss of profit, business, reputation, contracts, revenues or anticipated savings for any special, indirect or consequential damage of any nature, which arises directly or indirectly from any default on the part of either Party. Nothing in this clause shall affect the responsibility of either Party in relation to death or personal injury caused by the negligence of that Party or its servants, subcontractors, agents or employees.

(*Id*. at PageID 1672.) In a Wavier[3] provision, the parties specified that no waiver would be enforced unless in writing:

---

[3] The provision is labeled Entire Agreement; Waiver, but the Court reduces it to Waiver for simplicity.

> This Agreement and all other documents incorporated or referenced herein, supersede all prior understandings or contracts, and constitute the entire agreement existing between the parties respecting the subject matter of this Agreement, and neither party shall be entitled to any benefits other than as specified. No waiver or discharge of any breach of this Agreement shall be effective unless it is in writing signed by both parties. Any waiver of any breach of any provision of this Agreement shall not be a waiver of any subsequent breach of the same or of any other provision of this Agreement.

(*Id*. at PageID 1673.)

**B. Symphony Seeks Collection of Invoices for Work Performed More Than 75 Days Prior**

During the parties' contractual relationship, Medpace passed invoices it received from Symphony to Alnylam, the MSA sponsor, for payment, and for all invoices that Alnylam paid, Medpace passed through all such payments to Symphony. (Sergent Dec., Doc. 65-1 at PageID 1661.) In early December 2021 and continuing in 2022, Symphony submitted numerous invoices to Medpace totaling over two million dollars for services rendered and expenses incurred earlier than 75 days prior, dating back to September 2020. (*Id*.) Medpace passed these invoices along to the sponsor, Alnylam. (*Id*.) Alnylam "asserted its rights as third-party beneficiary to decline to pay those untimely invoices." (*Id.*)

**C. Discovery and Communication of Late Invoices**

Symphony fell behind on its invoicing at the end of 2020. On November 4, 2020, Robin Clauson, Revenue Accounting Associate for Symphony, sent an email[4] apologizing for the delay and stating that billing for September 2020 and October 2020 would be sent at the end of November 2020 or early December 2020 as it integrated to a new system. (Doc. 72-5 at PageID 2391.)

[4] It is unclear to whom the email was sent.

On March 19, 2021, Clauson responded to a thread of email inquiries from Colleen Stoeckel, Account Analysis of Commercial Operations for Medpace, regarding monthly accruals for March 2021 on six Medpace/Alnylam studies. (Doc. 62-2 at PageID 1613–14.) Clauson stated that Symphony was "expecting more delays than expected due to COVID and the integration to the new billing system." (*Id*. at PageID 1613.) She stated that Symphony was working to resolve the delay and was "expecting billing to resume to a monthly schedule by the end of June 2021." (*Id*.)

In August 2021, Tennyson Hunt at Alnylam emailed Stoeckel at Medpace over a "large gap" in invoicing dating back a year prior and spanning about nine months:

> The Alnylam studies (G01-002, G01-003, G01-004, G01-005) CTMs identified a large gap in Symphony passthrough invoicing from Aug/Sep/Oct-2020 to May-2021. This will have a significant effect on our financials. Can you please look into this issue ASAP?

(Sergent Dep., Ex. 4, Doc. 60-1 at PageID 1541.) The email was circulated within Medpace, and Stoeckel responded internally that she had reached out to Symphony about the issue "multiple times and followed up this afternoon." (Sergent Dep., Ex. 9, Doc. 60-4 at PageID 1552.) She stated that Symphony had indicated "this was because of COVID-19 and integration with their parent company's billing system." (*Id*.)

Stoeckel contacted Consuelo Erwin at Symphony on August 11, 2021 requesting an update on the gap in Symphony passthrough invoicing from August/September/October 2020 to May 2021. (Sergent Dep., Ex. 8, Doc. 60-3 at PageID 1550–51.) Stoeckel inquired to Symphony without response until Stacy Hunt with Medpace also reached out to Symphony regarding the delay. (*Id*. at PageID 1548.) On September 13, 2021, Monica Cancino, Accounts Receivable manager for ICON, Symphony's parent company, responded with a brief apology and update, stating:

> I do apologize for the delay in invoicing. We are working on getting everything up to date and to once again continue consistent billing. You should be receiving an invoice for all unbilled direct fees no later than October 2021. At which point you will once again start receiving monthly invoices.

(*Id*. at PageID 1547.) Symphony sent invoices to Medpace in December 2021 and into 2022. (Sergent Dep., Exhibit 7, Doc. 60-2 at PageID 1544–45.) Symphony submitted numerous invoices totaling over two million dollars for services rendered and expenses incurred, dating back as far as September 2020. (Sergent Dec., Doc. 65-1 at PageID 1661.) Medpace passed these invoices on to Alnylam. (*Id*.)

On March 11, 2022, Symphony, under the name Accellacare, sent a letter to Medpace in which it acknowledged the delays in invoicing:

> Dear Valued Partner,
>
> As Accellacare Home Health Services (AIS) continues to align our business operations into ICON, we want to take an opportunity to address the significant backlog of protocol invoicing you have encountered over the course of our integration process. We understand the criticality of **on-time** invoicing to ensure proper oversight of protocol-related activities and budget alignment.
>
> When we initially started the integration pilot of Accounting systems back in September 2020, we quickly determined the suggested ICON system was not a sustainable system for our homecare model. After numerous attempts to implement changes to align with our requirements, it was decided a new system mapped to our service line was required. The initiative to identify this new method was performed in early 2021 and by late Spring we went "live" following development and training. We recognize this delay had a substantial impact on your study whether it was budget and/or forecasting related. We are also aware this interruption may have caused a direct impact to your budget. If this is the case, we are more than happy to facilitate a call to discuss the specific details regarding any related charges exceeding the allotted budget.
>
> We are happy to share we have a suitable solution in full swing and are getting back on track with our monthly invoicing regimen.

(Doc. 65-3 at PageID 1683) (emphasis in original). On August 31, 2022, Daniel Sergent, Director of Vendor Management at Medpace, sent a letter to Soucy stating Medpace

would remit payment on behalf of Alnylam for invoices from the last six months of performance, noting that Medpace viewed the late invoices as a violation of the parties' MSA:

> The Master Services Agreement for Clinical Trials dated 23 February 2016 by and between Clinical Resource Network, LC d/b/a Symphony Clinical Research ("Symphony") and Medpace, Inc. ("Medpace"), as amended (the "Agreement") states in Section 1.d, "Invoices must be received within seventy-five (75) days of the performance of the Service(s) or the incurrence of any pass-through expense included in the invoice. Invoices received seventy-five (75) days after will not be paid" (emphasis added). Symphony violated this requirement by invoicing far past 75 days after services were performed.
>
> The invoices for services corresponding to Alnylam protocols ALN-G01-002, ALN-G01-003, ALN-G01-004, ALN-G01-005, and ALN-AS1-003 that were performed from April 2020 through 22 September 2021 were not provided to Medpace until December 2021, well beyond the 75-day timeframe in the Agreement referenced above. Despite these explicit terms of the Agreement, in the spirit of partnership and cooperation, Alnylam has agreed to make payment for all services invoiced within six months of performance, which totals $513,620. Accordingly, Medpace expects Symphony to accept such payment of $513,620 as payment in full for the services performed prior to 22 September (the date 75 days prior to the date the invoices were received), given Symphony's significantly delayed invoicing in 2020 and 2021.

(Doc. 62-3 at PageID 1618; Doc. 61-1 at PageID 1558.) On December 7, 2022, Medpace remitted payment of $513,620.00 to Accellacare. (Doc. 62-5 at PageID 1621.)

**D. Procedural History**

On April 27, 2023, Symphony filed this federal lawsuit against Medpace, asserting breach of contract as well as now-dismissed equitable claims. With only the breach of contract claim remaining, Medpace filed the currently pending Motion for Summary Judgment on January 6, 2026 (Doc. 63), to which Symphony responded in opposition on February 11, 2026 (Doc. 73), and Medpace replied on March 5, 2026 (Doc. 74). Because Symphony is unable to prove its claim, the Court will grant Medpace's Motion for Summary Judgment.

## II. LEGAL STANDARD

Medpace moves for summary judgment under Federal Rule of Civil Procedure 56, under which summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at

248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Federal courts sitting in diversity apply the choice-of-law principles of the forum state, which in this case is Ohio. *Eagle Express, Inc. v. Paycor, Inc.*, 732 F. Supp. 3d 753, 757–58 (S.D. Ohio 2024) (citing *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003)). "Under Ohio choice-of-law principles, a contract's choice-of-law provision governs unless 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.'" *Id.* at 758 (citing *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683, 686 (1983)). The MSA designates Ohio law as the governing law of the parties' MSA, and Medpace is headquartered and provides services in Ohio. (Doc. 65-2 at PageID 1673.) The parties therefore had a reasonable basis for their choice of law within the MSA, which the Court will enforce.

## III. ANALYSIS

### A. Breach of Contract

Symphony alleges that Medpace's failure to pay undisputedly late invoices is a breach of the parties' MSA that explicitly states that invoices received after 75 days of performance of services will not be paid. Under Ohio law, a breach of contract claim has four elements: "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach." *Brendamour v. Indian Hill*, 2022-Ohio-4724, ¶ 18, 204 N.E.3d 1085, 1089 (Ohio Ct. App. 2022) (citing *White v. Pitman*, 2020-Ohio-3957, ¶ 37, 156 N.E.3d 1026, 1036 (Ohio Ct. App. 2020)). Failure of any one element dooms the entire breach-of-contract claim. *Sound Energy Co., Inc. v. Ascent Resources-Utica, LLC*, No. 2:18-cv-1771, 2021 WL 1102483, at *7 (S.D. Ohio Mar. 23, 2021) (citing *Asset Mgmt. One LLC v. U.S. Bank*

*Nat. Ass'n*, 569 F. App'x 438, 441 (6th Cir. 2014)). In moving for summary judgment, Medpace asserts that Symphony is unable to meet the second, third, and fourth elements of a breach of contract claim under Ohio law.[5]

**1. Whether Symphony Performed Under the MSA**

Under the second element of a breach of contract claim, Symphony must prove that it performed under the parties' MSA. Medpace asserts that Symphony failed to perform its contractual duties under the MSA because it did not submit timely invoices. Under Section 1(d) of the MSA, "Invoice," "Symphony shall provide Company with invoices on a monthly basis for services actually performed." (Doc. 65-2 at PageID 1667–68.) The MSA specifies that "Invoices must be received within seventy-five (75) days of the performance of the Service(s) or the incurrence of any pass-through expense included in the invoice. Invoices received seventy five (75) days after will not be paid." (*Id*. at PageID 1668.)

As set forth in the facts, in August 2021, Alynlam, the Sponsor of the MSA, told Medpace that it failed to submit monthly invoices for a period from August/September 2020 into December 2021. Medpace and Alnylam calculated that Symphony billed more than two million dollars for services dating back as far as September 2020, which it determined did not comply with the Invoice provision of the MSA requiring invoices be sent within 75 days of services provided. There is no dispute that the invoices upon which Symphony seeks to now collect were submitted more than 75 days after services rendered. Thus, Symphony failed to perform under the terms of the MSA.

Responding, Symphony asserts that it substantially performed. That is so, it argues, because it provided contracted-for services from which Medpace, and in turn, Alynlam, benefitted, which was the essential and primary aspect of the parties' agreement. "When the

[5] Medpace also argues that summary judgment is appropriate under the parties' limitation of liability clause in the MSA, an argument the Court need not address as summary judgment on the elements is appropriate.

facts presented are undisputed, whether they constitute a performance or a breach of a written contract, is a question of law for the court." *Kumar v. USA Insulation*, 2018-Ohio-5332, ¶ 19, 127 N.E.3d 344, 348 (Ohio Ct. App. 2018) (citing *Luntz v. Stern*, 135 Ohio St. 225, 20 N.E.2d 241 (1939), paragraph five of the syllabus). "Where the party obligated to perform under the contract makes an honest effort to do so, and there is no willful omission on its part, substantial performance is all that is required to entitle the party to payment under the contract." *Id*. (citing *Cleveland Neighborhood Health Serv., Inc. v. St. Clair Builders, Inc.*, 64 Ohio App.3d 639, 644, 582 N.E.2d 640, 644 (Ohio Ct. App. 1989), citing *Ashley v. Henahan*, 56 Ohio St. 559, 569, 47 N.E. 573, 575 (1897)). "'Substantial performance of a contract is interpreted to mean that mere nominal, trifling, or technical departures are not sufficient to break a contract, and that slight departures, omissions and inadvertencies should be disregarded.'" *Id.* (quoting *Kichler's, Inc. v. Persinger*, 24 Ohio App.2d 124, 126, 265 N.E.2d 319, 321 (Ohio Ct. App. 1970)). If performance of a term in the contract is considered essential to the agreement, then a breach of that term discharges the obligations of the non-breaching party. *Abercrombie & Fitch Co. v. Fed. Ins. Co.*, No. 2:06-cv-831, 2011 WL 1237611, at *7 (S.D. Ohio Mar. 30, 2011) (citing *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App. 3d 163, 170, 583 N.E.2d 1056, 1060 (Ohio Ct. App. 1990)).

Here, the Invoice provision is directly related to payment and establishes a clear consequence of non-payment if an invoice is submitted more than 75 days after services are performed. Symphony argues that this provision is merely administrative and that courts reject such administrative provisions as strict conditions precedent that work like a forfeiture. The Court is not persuaded. As noted above, the timing provision is tied to a direct consequence of non-payment.

Moreover, the cases upon which Symphony relies are not factually similar and therefore provide little guidance to the Court on this issue. For instance, Symphony relies upon the proposition that "a pay-when-paid provision serves as a timing mechanism, and not a condition precedent, for payment." *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.*, 196 Ohio App. 3d 784, 790, 965 N.E.2d 1007, 1012 (Ohio Ct. App. 2011) (citing *Sloan & Co. v. Liberty Mut. Ins. Co*., 653 F.3d 175, 180 (3d Cir. 2011)). The *Evans* case, however, involves interpretation of a "long-standing disagreement between general contractors and subcontractors over the enforcement of 'pay-when-paid' and 'pay-if-paid' contractual provisions," which is not applicable here. *Id*. at 1011. Another case upon which Symphony relies involved an attorney's letter, which deviated from the contract's express terms requiring written notice of default and election to pursue contractual remedies for breach, but the deviation was technical and insufficient to constitute a breach of the parties' contract. *Stonehenge Land Co. v. Beazer Homes Invest., L.L.C.*, 177 Ohio App.3d 7, 18, 893 N.E.2d 855, 863, 2008-Ohio-148, ¶ 24 (Ohio App. Ct. 2008). And in *Kumar*, the court found the plaintiff substantially performed where only five to ten percent of a project remained, or three to four labor hours, and the remainder of the project was not able to be completed because the plaintiff barred the defendant into the home. *Kumar*, 127 N.E.3d at 348. Again, these cases are factually dissimilar to a company not paying invoices where an explicit provision in their agreement states that late invoices will not be paid after a deadline passes.

The Court does not agree that failure to provide monthly invoices, listed as an express Obligation under the terms of the MSA, was a trifling or administrative technicality, as in some of the prior cases. The fact that over two million dollars of services were not timely billed goes directly to this point; the failure to provide invoices resulted in a significant business disruption

as evidenced by the emails and internal consternation reflected therein. Symphony does not provide evidence that it substantially complied with the invoice requirement, such as by providing evidence of an accidental one-off month lapse in billing due to technical issue in sending an invoice. Rather, Symphony repeatedly disregarded its obligation under the terms of the MSA to provide monthly invoices, which in turn generated a significant backlog of months'-old invoices, all of which were tied to a direct consequence of non-payment.

Symphony asserts that administrative deviations cannot defeat the essential benefit of the bargain and will not bar an action for breach of contract, particularly because Symphony provided "notice" of the late invoices. The facts demonstrate that invoices corresponding to Alnylam protocols ALN-G01-002, ALN-G01-003, ALN-G01-004, ALN-G01-005, and ALN-AS1-003 for services performed from April 2020 through September 2021, were not provided to Medpace until December 2021. (Doc. 62-3 at PageID 1618.) The Court does not agree that advance notice would alter the parties' express agreement that late invoices will not be paid given the explicit language of the MSA.

Plaintiff attempts to rely upon a proposed expert, Dr. William Gannon, who purports to opine that Symphony did in fact substantially comply with the terms of the MSA. (*See* Doc. 72-1.) Specifically, Dr. Gannon states that the scope of his opinion is "whether Medpace, Inc. is contractually obligated to pay for services performed by Symphony between April 2020 and September 2021 under the Master Services Agreement effective February 23, 2016, and extended through February 23, 2026." (*Id*. at PageID 2287.) When the facts are not in dispute, substantial compliance is a question of law for the Court. *Kumar*, 127 N.E.3d at 348. The Court finds the proposed expert report to be wholly inappropriate and an invasion of the Court's

province to determine the ultimate question of law. The Court, therefore, will not consider Dr. Gannon's opinion on the ultimate legal issue of this case.

Symphony argues that it substantially complied with the MSA terms by providing monthly billing forecasts which could be used for budgeting purposes. (*See, e.g.,* Doc. 72-2 at PageID 2305–2354.[6]) Symphony explains that the delays in generating invoices were caused by COVID and ICON's acquisition of Symphony and Symphony's resulting integration into a new billing system. (*See* Doc. 62-2 at PageID 1613–18; Doc. 72-5 at PageID 2391–92.) However, billing forecasts are not the same as invoices. Sergent attested that estimates or forecasts were not always submitted monthly, did not reference services actually performed, were at times "grossly inaccurate" compared to services actually performed or expenses incurred. (Doc. 61-1 at PageID 1562.) Invoices were distinct from forecasts. Further, the reason for the delay is immaterial to the fact that the delay occurred.

To find Symphony substantially performed under the MSA would be to remove the last four words of the invoicing provision, which is contrary to Ohio law. "Every word in a contract should be given meaning; no word should be construed as surplusage." *Summitcrest, Inc. v. Eric Petroleum Corp*., 2016-Ohio-888, ¶ 37, 60 N.E.3d 807, 816 (Ohio Ct. App. 2016) (citing *Cincinnati v. Gas Light & Coke Co*., 53 Ohio St. 278, 285, 41 N.E. 239, 241 (Ohio 1895)). Ignoring the clear consequence of failure to provide timely invoices would be to rewrite the parties' express agreement by removing explicit language.

**2. Whether Medpace Breached the MSA**

For the straightforward reasons set forth herein, the Court agrees with Medpace that non-payment of the disputed invoices is not a breach of the MSA. The facts are undisputed:

[6] Doc. 72-5, along with some other Symphony-filed exhibits, were very blurry and difficult to read.

Symphony seeks to collect on invoices that were not invoiced within 75 days of services rendered. Medpace is not obligated under the plain language of Section 1(d) of the MSA to pay invoices received after 75 days of performance of services. Section 1(d) of the MSA explicitly states the parties' agreed-upon provision regarding Invoice payment:

> Invoices must be received within seventy-five (75) days of the performance of the Service(s) or the incurrence of any pass-through expense included in the invoice. Invoices received seventy five (75) days after will not be paid.

(Doc. 65-2 at PageID 1668.)

As Medpace argues, there is no independent obligation placed on Medpace to pay the undisputedly late invoices under the plain reading of the MSA. The MSA does not impose an obligation to pay invoices received more than 75 days after services are rendered. These are the parties' negotiated terms. It is not the Court's role to evaluate the terms' fairness or to determine that the invoicing provision should be re-written because the extent of the late invoices amounts to a significant sum of money. The parties agreed to these terms for a reason, and so it is.

Symphony argues that those invoices *should* be paid because the services were rendered and Medpace, or its Sponsor, benefited from those services. Finding payment is owed after 75 days has elapsed from the services provided would be in direct contravention of the plain, unambiguous contract terms to which both of these sophisticated parties agreed. Medpace's refusal to pay late invoices is clearly within its rights under the terms to which the parties agreed. As such, Symphony has failed to demonstrate that Medpace breached the parties' MSA.[7]

**3. Waiver**

Symphony argues that Medpace's course of performance altered the language of the MSA containing a clear consequence for late invoices as well as an explicit no-waiver provision.

[7] Whether the breach is material is not before the Court as Medpace did not breach the MSA.

Specifically, Symphony's position is that the course of performance demonstrates that Medpace waived the very clear contractual language in the invoice provision stating:

> Invoices must be received within seventy-five (75) days of the performance of the Service(s) or the incurrence of any pass-through expense included in the invoice. Invoices received seventy five (75) days after will not be paid.

(Doc. 65-2 at PageID 1668.) And, further, Symphony contends Medpace waived the no-waiver provision, too, which states:

> g) **Entire Agreement; Waiver.** This Agreement and all other documents incorporated or referenced herein, supersede all prior understandings or contracts, and constitute the entire agreement existing between the parties respecting the subject matter of this Agreement, and neither party shall be entitled to any benefits other than as specified. No waiver or discharge of any breach of this Agreement shall be effective unless it is in writing signed by both parties. Any waiver of any breach of any provision of this Agreement shall not be a waiver of any subsequent breach of the same or of any other provision of this Agreement.

(*Id*. at PageID 1673.) The waiver provision explicitly requires that any waiver of duties under the contract must be in writing and signed by both parties.

There are several reasons Symphony's waiver argument fails. First, the language of the MSA forecloses waiver. The terms of the contract provide a clear consequence for non-compliance, and the parties agreed that no waiver would be effective unless in writing. There is no evidence of a written waiver signed by both parties. Second, the Court is not persuaded by Symphony's position that the evidence demonstrates a question of material fact as to whether Medpace waived the 75-day invoicing provision through its course of performance. This is so because there is no evidence that the parties intended to waive the no-waiver and Invoice provision. Third, the law upon which Symphony relies is not applicable.[8]

---

[8] For instance, in support of its course of performance argument, Symphony relies upon the principles set forth under the U.C.C. which applies to the sale of goods, not services. *See* Ohio Rev. Code § 1301.303.

The Court does not agree that the parties' course of performance undermines the language of the MSA despite the lack of a written waiver. To begin, a waiver is a voluntary relinquishment of a known right otherwise exercisable by a party to the contract.[9] *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960, 965 (2000). Under Ohio law:

> When a party to a contract offers, by word or action, a waiver of certain duties under the contract, other parties who change their position as a result of the waiver may enforce the waiver. The party asserting the existence of a waiver must prove the waiving party's clear, unequivocal, and decisive act to waive. Whether a party's inconsistent conduct amounts to a waiver involves a factual determination to be resolved by the trier of fact.

*CosmetiCredit, L.L.C. v. World Fin. Network Natl. Bank*, 2014-Ohio-5301, ¶ 29, 24 N.E.3d 762, 773 (Ohio Ct. App. 2014) (internal citations removed). Whether a no-oral-modification clause or written waiver clause has been waived by the parties' actions is a question of fact. *3637 Green Rd. Co. v. Specialized Component Sales Co*., Inc., 2016-Ohio-5324, ¶ 23, 69 N.E.3d 1083, 1093 (Ohio Ct. App. 2016).[10]

Symphony argues that the following evidence demonstrates that Medpace intended to waive the Invoice provision: receipt of notice of invoicing delays; acceptance of performance with knowledge of delays; reliance on billing forecasts; and a partial payment of invoices it considers late; treatment of other vendors' late invoices as payable; and failure to contemporaneously track or enforce a 75-day invoicing deadline. Symphony argues this "overwhelming supports waiver" regardless of the formal no-waiver provision. (Doc. 73 at

[9] In citing a standard of law for waiver, Symphony relied upon an incorrect citation discussing waiver in the dissent of the opinion of *Am. Bus. Invs., LLC v. Shaeena & Allos, LLC*, 2023-Ohio-739, ¶48, 210 N.E.3d 651, 662 (Ohio Ct. App. 2023.), not "paragraph three of the syllabus," as Symphony represented. (*See* Doc. 73 at PageID 2554.)

[10] There were a number of issues with Symphony's legal citations in its Response in Opposition brief, including this citation. (*See* Doc. 73 at PageID 2556.) The Court was able to locate the case in its own research, but the citation is significantly different than the one provided.

PageID 2557.) As an initial matter, "[m]ere knowledge of changed conditions, simple acquiesce to a different course of performance, equivocal conduct, or conduct of doubtful import are not enough to show waiver." *Am. Municipal Power, Inc. v. Voith, Hydro*, *Inc*., 636 F. Supp. 3d 838, 868 (S.D. Ohio 2022). As demonstrated, Symphony's cited evidence does not support waiver.

Symphony argues that "receipt and retention of consideration after knowledge that conditions precedent have been broken, constitutes a waiver of such conditions so as to withdraw them from the terms of the contract." *English v. Nat'l Cas. Co*., 138 Ohio St. 166, 169, 34 N.E.2d 31, 33 (1941). This case, however, does not involve a condition precedent, which is a condition that must be performed before the obligations in the contract become effective. *Rudd v. Online Res. Inc.*, No. 17500, 1999 WL 397351, at *7 (citing *Troha v. Troha*, 105 Ohio App.3d 327, 663 N.E.2d 1319 (Ohio Ct. App. 1995)). Conditions precedent are disfavored under Ohio law, and courts must avoid construing provisions to be conditions precedent unless the intent of the agreement is plainly to the contrary—which is not the case here. *Id.* (citing 17A American Jurisprudence 2d (1991) 491, Contracts, Section 471, citing Restatement of Law 2d, Contracts, Section 227). Rather, the explicit language of the MSA, noted above, describes a direct consequence for late submission of invoices. There is also no obligation by Symphony to track its invoices. Receipt and retention of the benefit of services while awaiting invoicing for payment—regardless of tracking invoices itself—is accounted for in the very language of the MSA itself.

Symphony argues that Medpace's acceptance of its services with notice that it was behind on its billing and that it had been notified in advance demonstrates waiver. The Court does not agree. In support of its position, Symphony relies upon two emails that it asserts provided the requisite notice to support its position that acceptance of services thereafter constituted waiver.

The first-cited notice is an email from Symphony referencing delays to billing for September 2020 and October 2020 and stating invoices will be sent end of November 2020 to early December 2020. (Doc. 72-5 at PageID 2392.) The second-cited email is from Symphony to Medpace in March 2021 in response to a series of inquiries regarding invoices, stating that "[w]e are experiencing more delays than expected due to COVID and the integration to the new billing system" and giving a target of resuming monthly billing by the end of June 2021. (Doc. 62-2 at PageID 1613–16.) The Court does not find that either of these emails creates a question of fact over whether Medpace waived its contractual right to decline paying late invoices, a possibility accounted for in the language of the MSA itself.

The Court also does not accept Symphony's positions regarding billing forecasts and treatment of other contractual relationships. First, Symphony argues that Medpace's acceptance and reliance upon billing forecasts, which are not invoices, demonstrates waiver. (*See, e.g.*, Doc. 72-2; 62-1.) Again, as billing forecasts are not invoices, the Court finds that this is not evidence of waiver. As Medpace asserts, Symphony does not establish how this constitutes evidence that Medpace relinquished is rights under the MSA to not pay invoices submitted after 75 days of services. Second, Symphony claims that Medpace's failure to enforce invoice timing provisions in other contracts is evidence of waiver. This evidence is not relevant to the instant dispute, which involves a distinct contract with its unique course of performance.

Finally, Symphony asserts that Medpace's offer of settlement acts as a waiver, but it is barred by Federal Rule of Evidence 408. Specifically, Medpace offered payment of some late invoices as settlement of the parties' dispute. The letter included clear language that Medpace considered Symphony to have violated the parties' Invoice requirement. Specifically, on August 31, 2022, Sergent sent a letter to Soucy stating Medpace would remit payment on behalf of

Alnylam for invoices from the last six months of performance, noting that Medpace viewed the late invoices as a violation of the parties' MSA:

> The Master Services Agreement for Clinical Trials dated 23 February 2016 by and between Clinical Resource Network, LC d/b/a Symphony Clinical Research ("Symphony") and Medpace, Inc. ("Medpace"), as amended (the "Agreement") states in Section 1.d, "Invoices must be received within seventy-five (75) days of the performance of the Service(s) or the incurrence of any pass-through expense included in the invoice. Invoices received seventy-five (75) days after will not be paid" (emphasis added). Symphony violated this requirement by invoicing far past 75 days after services were performed.
>
> The invoices for services corresponding to Alnylam protocols ALN-G01-002, ALN-G01-003, ALN-G01-004, ALN-G01-005, and ALN-AS1-003 that were performed from April 2020 through 22 September 2021 were not provided to Medpace until December 2021, well beyond the 75-day timeframe in the Agreement referenced above. Despite these explicit terms of the Agreement, in the spirit of partnership and cooperation, Alnylam has agreed to make payment for all services invoiced within six months of performance, which totals $513,620. Accordingly, Medpace expects Symphony to accept such payment of $513,620 as payment in full for the services performed prior to 22 September (the date 75 days prior to the date the invoices were received), given Symphony's significantly delayed invoicing in 2020 and 2021.

(Doc. 62-3 at PageID 1618.) On December 7, 2022, Medpace remitted payment of $513,620.00 to Accellacare. (Doc. 62-5 at PageID 1621.) The Court finds that this is a settlement offer under Federal Rule of Evidence 408(a)(1)–(2), which is prohibited evidence for the purpose of proving liability.[11]

---

[11] Federal Rule of Evidence 408(a) states:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

The other cases Symphony draws upon in support of its waiver position are distinguishable and unhelpful to the Court's analysis on this topic. Symphony cites *3637 Green*, which focused upon a modification to a contract and included "substantial, competent credible evidence in the record" to support waiver of a no-oral-modification and written waiver provision in a lease by course of conduct. 69 N.E.3d at 1093. In *3637 Green*, a landlord and tenant discussed a rent reduction. *Id.* The landlord accepted reduced rent without objection for eight years; the account was marked as zero balance; and there was no evidence that the company noted a delinquency in rent payments until the filing of an underlying lawsuit. *Id*. The court found this as evidence that the parties "unequivocally and decisively acted upon their oral agreement to reduce the rent" and the lease's no-oral-modification provision and written waiver provisions did not preclude the enforcement of the oral modification. *Id*. at 1094. The evidence of waiver is simply not on par with the dearth of such evidence in this case.

Symphony also cites *Iron Horse Bar & Grill, LLC v. GGJ Triune, PLL*, 2024-Ohio-284, ¶ 35–40, 234 N.E.3d 620, 629[12] (Ohio Ct. App. 2024), where the Court of Appeals of Ohio, Sixth District, found that the trial court erred in determining the defendant could not waive payment because there was clear, incontrovertible evidence demonstrating waiver, including testimony of the intent to waive rent during a period of time. Again, such evidence is lacking in this case.

Symphony's explanations do not change the Invoice requirement itself or Medpace's ability to invoke its right not to pay. Adopting Symphony's position would be in violation of the parties' explicitly stated no-waiver provision, which accounts for the possibility that invoices are received after 75 days. The very language the parties agreed to states that such invoices will not

[12] The pin-point pages cited by Symphony in its Response brief (633–39) do not exist.

be paid. Symphony has not demonstrated evidence that Medpace voluntarily relinquished its right not to pay late invoices.[13] For these many reasons, the Court finds Medpace did not waive its rights under the MSA.

**4. Bad Faith**

Symphony asserts that Ohio law implies a duty of good faith and fair dealing into every contract, and that duty prohibits a party from exercising contractual rights in a manner that is commercially unreasonable or opportunistically inconsistent with the parties' course of performance. It argues that "Medpace's reliance on the 75-day deadline represents an opportunist departure from the parties' established course of performance." (Doc. 73 at PageID 2557.) "A breach of the covenant of good faith and fair dealing does not stand alone as a separate claim from breach of contract." *Third Fed. S. & L. Ass'n of Cleveland v. Formanik*, 2016-Ohio-7478, ¶ 46, 64 N.E.3d 1034, 1049 (Ohio App. Ct. 2016) (internal quotations and citation removed). As the breach of contract claim does not survive summary judgment, the alleged breach of the duty of good faith and fair dealing also fails.

[13] Symphony also argues that the selective enforcement of the invoicing provision with respect to other vendors demonstrates bad faith. The Court finds that this evidence is irrelevant to the parties' dispute as those contracts involved different parties and circumstances. Further, Medpace did not violate the MSA by adhering to the very terms of the parties' agreement.

## IV. CONCLUSION

The parties' bargained-for MSA contains a clear consequence for failing to timely submit invoices: they will not be paid. Because Symphony cannot prove its breach of contract claim, Medpace is entitled to summary judgment. Medpace's Motion for Summary Judgment (Doc. 63) is, therefore, **GRANTED**.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court